**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | |
|---|---|
| SARA RENAE RAGER, ) | CASE NO. 3:20-CV-01200-JRK |
| ) | |
| Plaintiff, ) | JUDGE JAMES R. KNEPP, II |
| ) | UNITED STATES DISTRICT JUDGE |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL ) | CARMEN E. HENDERSON |
| SECURITY ADMINISTRATION, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Defendant, ) | |

**I. Introduction**

Plaintiff, Sara Renae Rager ("Rager" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On June 7, 2017, Claimant filed applications for DIB and SSI, alleging a disability onset date of January 1, 2017. (ECF No. 12, PageID #: 254). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ").  (ECF No. 12, PageID #: 198). On October 22, 2018, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No. 12, PageID #: 113-147). Through counsel, Claimant amended her claim to a closed period of disability beginning on January 1, 2017 and ending on January 1, 2018. (ECF No. 12, PageID #:

1

303). On January 31, 2019, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 12, PageID #: 89). The ALJ's decision became final on March 31, 2020, when the Appeals Council declined further review. (ECF No. 12, PageID #: 77).

On June 1, 2020, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13, 14). Claimant asserts one assignment of error: "The ALJ failed to properly explain why she gave "Great Weight" to the opinions of the State Agency psychological experts but failed to include in her determined RFC a limitation to superficial interactions with others. As such, the decision is not substantially supported." (ECF. No. 13 at 1).

### III. Background

#### A. Hearing Testimony

The ALJ summarized the testimony from Claimant's hearing:

> The claimant alleged having longstanding symptoms of depression since she was a child that stemmed from a "hard family life" (Testimony). Shortly before her alleged onset date, the claimant initiated treatment at Apple Tree in October 2016, due to progressively worsening depressive symptoms (Testimony). Thereafter, the claimant was traumatically assaulted in December 2016, while she was at college (Testimony). Hearing testimony indicated that thereafter, in February 2017, the claimant moved back with her grandmother, where she was able to follow-up at Apple Seed on a more consistent basis (Testimony).
>
> The claimant testified that secondary to her traumatic experience and ongoing depressive symptoms, the claimant became fearful of people and had difficulties leaving home (Testimony). The claimant explained that she had significant difficulties being out in the community and she stayed home a lot with her grandmother (Testimony). The claimant related that her symptoms of anxiety cause her to be unable to "think straight" or ["]focus on one task" (4E/l). The claimant reported feeling physically ill due to chest pain and nausea (4E).

(ECF No. 12, PageID #: 99-100).

**B. Medical Evidence**[1]

The ALJ also summarized Claimant's health records and symptoms:

> Prior to her application date, the claimant sought and received specialized outpatient mental health treatment at Behavioral Connections of Wood County, where she was evaluated by David Zick, M.D., a psychiatrist (1F). Dr. Zick prescribed medications, including Prozac, Trazodone, Lamictal, and Latuda to treat her symptoms of anxiety and depression (1F/5). The claimant reported that she had transferred to Bowling Green State University's Firelands' campus and was transferring mental health services to a different facility that was closer to where she lived (1F/4 and 7). Treatment notes indicate the claimant was diagnosed with bipolar disorder and attention deficit disorder (3F/7). From July 2016, through October 2016, the claimant continued receiving medication management services Fisher Titus Psychiatry, with Felicia Fior-Nossek, C.N.S, who prescribed Latuda, Trazodon, and hydroxyzine (3F/7). The claimant also received counseling services at Appleseed, where the claimant was diagnosed with bipolar disorder, borderline personality disorder, and post traumatic stress disorder (3F; See 3F/5 and 2A/5). Ms. Fior-Nossek assessed the claimant with a GAF of 65 (3F/7). A GAF of 61 to 70 indicates that some mild symptoms are present or there is some difficulty in social, occupational, or school functioning, but generally functioning pretty well.
>
> The record shows that around her alleged onset date, the claimant was transitioning care. In February 2017, the claimant was treated at a local emergency department for acute anxiety (4F/46-58). At that time, the claimant disclosed that she had recently switched providers and she had run out of her medications (4F/46). The claimant felt anxious for the past two hours and was concerned that her anxiety would worsen over the weekend (4F/46). Michael Kirschmann, P.A- C., explained that he would not give a long-standing prescriptions for her medications, but was happy to provide a bridge prescription of three days, which would allow the claimant to see her primary care physician (4F/49, and 55-56). Shortly thereafter, the claimant established treatment with Max Pavlock, D.O., her primary care physician. Treatment records reveals that she received routine and conservative treatment with

---

[1] Due to the limited scope of Claimant's appeal, the Court finds the ALJ's summary of facts sufficient here. This summary is not meant to be exhaustive. Additional facts are included in the analysis when necessary.

Dr. Pavlock, who provided medication management and medication refills of duloxetine, tramadol, and ADD (4F and 9F). Her therapist, Pamela Lemasto, M.A., L.P.C., worked with the claimant [to] improve daily functioning by focusing on healthy coping skills and reinforcing cognitive, rational, and solution focused strategies, practical coping strategies, and developing problem solving skills (e.g. 12F/18). The claimant also participated in group therapy to developed [sic] emotion regulation and safety, interpersonal skills, distress tolerance, and increase her functioning (12F/7). Since that time, the claimant has taken appropriate medications for her alleged impairments and the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.

During the relevant period, the claimant reported experiencing various stressors. The claimant reported being stressed because her job was not giving her enough hours (7F/24). Consistent with her testimony, the record shows the claimant reported being sexually assaulted in April 2017, and later treated for vaginal irritation and pain (4F/40-44), and PTSD (4F and 7F). She also reported having increased stress due to her grandmother's declining health, difficulties caring for her grandmother, and the claimant's own pregnancy and miscarriage (12F). The claimant reported needing to stay up all night to care for her grandmother (12F/9). In September 2017, the claimant reported struggling with the loss of her pregnancy (12F/12 and 14). Despite her sleep deprivation, treating providers, Pamela Lemasto, M.A., L.P.C., noted the claimant was alert and oriented (12F/9). She enjoyed meeting with other participants in group therapy and getting to know them (12F/9).

Although the claimant has reported worsening psychological symptoms at times, her treatment provider addressed these episodes promptly and sufficiently with adjustments to her medications (4F, 6F, 8F, and 12F). In August 2017, the claimant was briefly psychiatrically hospitalized secondary to worsening mood and suicidal ideation (8F/4). At that time, the claimant related that she had been doing very well on her medication regiment and realized that her pharmacy had made an error with her medication packets (8F/7). The claimant had not been getting her medications, Vraylar, over the past week and she wanted to get back on her medications (8F/4). The claimant was diagnosed with schizoaffective disorder. During her three-day hospitalization, the claimant noticed a significant improvement in her mood and sleep once she started taking all of her medications (8F/l). The claimant denied having any side effects and was behaviorally in control, as

> well as engaging in treatment (8F/l). Mental status examinations showed the claimant was alert, oriented person, place, and time, with good eye contact, mood, and linear, logical, and coherent thought processes (8F/1). She was stabilized to baseline and discharged without any thoughts of harming herself or others (8F/l). Follow-up records showed her mood improved once she resumed taking Vraylar (12F/5).

(ECF No. 12, PageID #: 101-102).

### C. Opinion Evidence at Issue

State Agency reviewing psychologist Kathleen Malloy, Ph.D. reviewed Claimant's medical records and opined that she was moderately limited in her abilities to interact with others and to adapt or manage herself; mildly limited in her ability to concentrate, persist, or maintain pace; and had no limitation in her ability to understand, remember, or apply information. (ECF No. 12, PageID #: 158). Dr. Malloy further explained that "[t]he claimant would be able to perform tasks with limited superficial contact with others including the general public. [Claimant] reports irritability. Counselor notes report claimant has made improvements in her handling of conflicts with others." (ECF No. 12, PageID #: 163). With respect to Claimant's adaptation limitations, Dr. Malloy explained "[t]he claimant would be able to perform tasks in an environment where duties would be static and change easily explained. Counselor notes improvement in her reactions to stress situations." (ECF No. 12, PageID #: 163).

State Agency reviewing psychologist Paul Tangeman, Ph.D. reviewed the records upon reconsideration. Dr. Tangeman opined that Claimant was moderately limited in her abilities to understand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (ECF No. 12, PageID #: 174). Dr. Tangeman's additional explanations for his opinion regarding Claimant's adaptation and social interaction limitations were substantially similar to Dr. Malloy's explanations. (ECF No. 12, PageID #:

5

180).

The ALJ stated: "the undersigned gives great weight to the mental assessment of the State Agency's psychological consultants who noted that the claimant would be able to perform tasks in environments where duties are static and can be easily explained. They noted that this was consistent with her therapist's reports that the claimant's reactions to stressful situations had improved (2A/1 l)." (ECF No. 12, PageID #: 104).

### IV. The ALJ's Decision

The ALJ made the following residual functional capacity ("RFC") finding:

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: never climb ladders, ropes, or scaffolds; and, never be exposed to hazards such as moving machinery and unprotected heights. She can perform simple, routine, and repetitive one-to-two-step tasks, but not at a production rate pace so, for example, no assembly line work. She can respond to occasional interaction with supervisors, co-workers, and the general public; but is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any and [sic] changes need to occur infrequently and be adequately and easily explained.

(ECF No. 12, PageID #: 99). Based on the vocational expert's testimony, considering Claimant's age, education, work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a)." (ECF No. 12, PageID #: 106).

### V. Law & Analysis

#### A. Standard of Review

6

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the

national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises the following issue on appeal: Whether "[t]he ALJ failed to properly explain why she gave 'Great Weight' to the opinions of the State Agency psychological experts but failed to include in her determined RFC a limitation to superficial interactions with others." (ECF No. 13 at 5).

Here, the ALJ gave "great weight to the mental assessment of the State Agency's psychological consultants who noted that the claimant would be able to perform tasks in environments where duties are static and can be easily explained. They noted that this was consistent with her therapist's reports that the claimant's reactions to stressful situations had improved (2A/l 1)." (ECF No. 12, PageID #: 104). Claimant reads the ALJ's language as the ALJ giving "great weight" to the entirety of the consultants' opinions, including their opinions that Claimant should be limited to superficial contact with others including the general public. Conversely, the Commissioner argues that "the ALJ did not adopt the opinions from the state agency reviewing psychologists. Rather, the ALJ gave significant weight to their opinions and utilized them, in addition to the other record evidence, in assessing Plaintiff's RFC." (ECF No. 14 at 8). The Commissioner argues that "the ALJ expressly assigned great weight to the portion

of the opinions indicating that Plaintiff could perform tasks in environments where the duties are static and can be easily explained (Tr. 28). The ALJ did not state that she found equally persuasive their limitation to limited, superficial contact with others, including the general public." (ECF No. 14 at 13). Moreover, the Commissioner acknowledges that the ALJ did not specifically address the superficial interaction limitation but argues that the ALJ's rejection of that limitation was implicit, and therefore any error was harmless. (ECF No. 14 at 13).

The Commissioner properly notes that the "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here. Nonetheless, the ALJ used the terminology customarily used under the prior regulations, when she assigned "great weight" to the State Agency reviewing psychologists' opinions. As explained below, the Court agrees with the Commissioner that despite using the terminology of "great weight", rather than "persuasive" or "unpersuasive", the ALJ met the goals of the new regulations in her consideration and explanation of the State Agency reviewing psychologists' opinions.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to

9

explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").

Dr. Malloy reviewed Claimant's medical records and opined that Claimant was moderately limited in her abilities to interact with others and to adapt or manage herself; mildly limited in her ability to concentrate, persist, or maintain pace; and had no limitation in her ability to understand, remember, or apply information. (ECF No. 12, PageID #: 158). With respect to Claimant's social interactions, Dr. Malloy further explained that "[t]he claimant would be able to perform tasks with limited superficial contact with others including the general public. [Claimant] reports irritability. Counselor notes report claimant has made improvements in her handling of conflicts with others." (ECF No. 12, PageID #: 163). With respect to Claimant's adaptation limitations, Dr. Malloy explained "[t]he claimant would be able to perform tasks in an environment where duties would be static and change easily explained. Counselor notes improvement in her reactions to stress situations." (ECF No. 12, PageID #: 163).

Dr. Tangeman, reviewed the records upon reconsideration. Dr. Tangeman opined that Claimant was moderately limited in her abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (ECF No. 12, PageID #: 174). Dr. Tangeman's additional explanations for his opinions regarding

Claimant's adaptation and social interaction limitations were substantially similar to Dr. Malloy's explanations. (ECF No. 12, PageID #: 180).

The ALJ stated: "the undersigned gives great weight to the mental assessment of the State Agency's psychological consultants who noted that the claimant would be able to perform tasks in environments where duties are static and can be easily explained. They noted that this was consistent with her therapist's reports that the claimant's reactions to stressful situations had improved (2A/l l)." (ECF No. 12, PageID #: 104). After considering Claimant's symptoms, the medical opinions, and prior administrative medical findings, the ALJ limited Claimant to occasional interaction with supervisors, co-workers, and the general public. (ECF No. 12, PageID #: 101).

The Court agrees with the Commissioner that the ALJ expressly assigned great weight to the portion of the State Agency reviewing psychologists' opinions indicating that Claimant could perform tasks in environments where the duties are static and can be easily explained. The ALJ mentions only the adaptation limitation in her finding. Additionally, the ALJ's support for her adoption of that specific limitation coincides with the reviewing psychologists' additional explanation of their adaptation limitation finding. Although she specifically mentioned the opinions adaptation limitation, the ALJ was silent on the remainder of the limitations discussed by the State Agency reviewing psychologists. (ECF No. 12, PageID #: 104).

An ALJ is not required to discuss every piece of evidence in the record to support her decision. *See, e.g., Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (citing *Thacker v. Commissioner*, 99 Fed. Appx. 661, 665 (6th Cir. 2004)). However, an ALJ must explain why she did not include the limitations from an opinion of a medical source in her determination of the claimant's RFC. *Id.* (citing *Fleischer v. Astrue*, 774

F.Supp.2d 875, 881 (N.D. Ohio 2011)). An ALJ is not required to mirror or parrot medical opinions verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "[I]t is only necessary that the ALJ's explanation, in the context of the decision as a whole, afford an opportunity for meaningful review so that the reviewing court can ensure that the decision is supported by substantial evidence." *Moscorelli*, 2016 WL 4486851 at *4 (citing *Miller v. Soc. Sec. Admin.*, Civil No. 3:14–2274, 2015 WL 4394800, at *7 (M.D. Tenn. July 16, 2015) ("Although Plaintiff is correct that the ALJ did not explicitly state Plaintiff's mental limitations in a concise sentence within her RFC determination...the entirety of the ALJ's decision and the hearing record show that she considered Plaintiff's mental limitations in determining her RFC."); *cf. Thompson v. Comm'r of Soc. Sec. Admin.*, No. 1:12–CV–2372, 2014 WL 356974, at *4 (N.D. Ohio Jan. 31, 2014) (recommending remand where ALJ failed to explain why he did not accept quota limitations and the "remainder of the ALJ's opinion d[id] not provide sufficient insight as to why the ALJ discounted the limitation[.]").

Here, the decision as a whole sufficiently explains why the ALJ declined to adopt the superficial interaction limitation. Interacting with others, the second of four "Paragraph B criteria", "refers to the abilities to relate to and work with supervisors, co-workers, and the public." Listing 12.00E(2), 20 C.F.R. § Pt. 404, Subpt. P, App. 1. "Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." *Id*. "Occasional" interaction is defined by the Agency and limits the quantity of the interaction to no more than one-third of the workday. *See* POMS DI

25001.001 at A.53. ("Use of this term in the SCO or RFC means that the activity or condition occurs at least once up to one-third of an 8-hour workday.). "Superficial" interaction addresses the nature, rather than the quantity, of the interaction. *See Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394 at *13, (N.D. Ohio, June 8, 2017), report and recommendation adopted by 2017 WL 2720332 (N.D. Ohio, June 23, 2017).

When analyzing Claimant's ability to interact with others under the paragraph B criteria, the ALJ stated:

> The claimant reports difficulties getting along with others (4E/6). Nevertheless, as chronicled in her treatment history and per her reports, the claimant has been able to navigate personal relationships. She has been able to maintain some close relationships in the community, such as her church, interact appropriately with medical providers, and shop independently in stores for food and clothing (4E). The record shows that the claimant participated in group therapy during the relevant period and she interacted well with her other group members (12F). The claimant disclosed that she enjoyed meeting with other participants and getting to know them better (12F/9). Treating providers described the claimant as talkative (12F/l).

(ECF No. 12, PageID #: 97). Thereafter, the ALJ found that Claimant was markedly limited in her ability to interact with others and further explained that "[t]here are no indications of more extreme, ongoing, difficulties in terms of her capacity to tolerate or interact with others." (ECF No. 12, PageID #: 97). Additionally, the ALJ cited evidence that Claimant's medications were relatively effective in controlling her symptoms. (ECF No. 12, PageID #: 101). Accordingly, the Court finds that the ALJ's decision sufficiently explains her decision not to include the superficial interaction limitation in the RFC.

Claimant cites to *Perrine v. Berryhill*, No. 1:18-CV-49, 2019 WL 1331597, at *7 (N.D. Ohio Mar. 25, 2019) in support of her argument that reversal is warranted. (ECF No. 13 at 9). However, *Perrine* is easily distinguishable. There, the ALJ specifically addressed and gave great

13

weight to the portion of the opinion at issue, but then failed to include the limitation in the RFC and failed to explain why the limitation was left out. Here, the ALJ did not expressly (nor implicitly) adopt the superficial interaction limitation. Accordingly, this is not a situation where an ALJ determined that an opinion is persuasive and states that it is consistent with the record, thus requiring her to incorporate the opined limitations or provide an explanation for declining to do so. *See, e.g., Perrine*, 2019 WL 1331597, at *7 (remand required where ALJ gave great weight to opinion of a State Agency reviewing physician but failed to explain exclusion of limitation in the opinion); *Queen v. Comm'r of Soc. Sec.*, No. 2:16-cv-1082, 2017 WL 6523296, at *9-10 (S.D. Ohio Dec. 21, 2017) (remanding where the ALJ "failed to include at least one limitation" from an opinion he had assigned great weight without explaining the omission).

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: June 30, 2021

                                                 s/ *Carmen E. Henderson*
                                                 CARMEN E. HENDERSON
                                                 U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).